1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAISY TURCZYNSKI,

11            Plaintiff,                    No. CIV S-07-0890 RRB GGH PS

12        vs.

13   JAMES FRIEDMAN, individually,          FINDINGS AND RECOMMENDATIONS
     SUSAN FRIEDMAN, individually,
14   STEWART TITLE COMPANY,
     CHICAGO TITLE COMPANY,
15   GOLDEN HORIZON MORTGAGE,
     nBank MORTGAGE, COLDWELL
16   BANKER ELITE, DOES 1 through 10,
     inclusive,
17
              Defendants.
18   _____/

19            Previously pending on this court's law and motion calendar for September 13,

20   2007, were defendants' motions to dismiss the amended complaint.[1]  Plaintiff Daisy Turczynski

21   appeared and represented herself in pro se.  The following counsel appeared on behalf of

22   defendants:  Richard Gray for the Friedmans, Christopher Blakes for Stewart Title Company,

23

24        _____

          [1]  The following defendants filed motions to dismiss:  (1) James and Susan Friedman
25   (joined by Chicago Title Company and nBank Mortgage), (2) nBank Mortgage (joined by
     Chicago Title Company and the Friedmans), and (3) Stewart Title Company (joined by the
26   Friedmans).  In addition, nBank Mortgage and Stewart Title Company moved, alternatively, to
     strike plaintiff's claim for punitive damages.

                                             1

1   Kathleen Moorhead for Chicago Title Company, and Stephen Davis for Nbank Mortgage.

2            For the reasons that follow, this court recommends dismissal of this action for

3   lack of federal subject matter jurisdiction.

4   <u>BACKGROUND</u>

5            By order filed May 31, 2007, this court granted plaintiff's application to proceed

6   in forma pauperis, directed the clerk to reimburse plaintiff the filing fee, and directed the U.S.

7   Marshal to serve process on plaintiff's amended complaint.  The court denied without prejudice

8   plaintiff's motion to quiet title.

9            The many documents before this court indicate that Benjamin Friedman, an

10  apparently wealthy businessman with several real estate holdings, acquired title to the subject

11  single family residence, the "Mabrey property," in October 2003.  Plaintiff commenced

12  occupying the property in July 2004; Benjamin offered to sell the property to plaintiff for less

13  than market value and encouraged her to make minor changes to it in order to meet the

14  requirements for providing foster care.  Lita Corbella, plaintiff's daughter and a real estate agent,

15  sold several properties for Benjamin in California pursuant to a power of attorney and apparently

16  wrote the subject "Purchase Agreement" for the Mabrey property.

17           The Amended Complaint provides that on November 4, 2004, plaintiff entered

18  into the Purchase Agreement with Benjamin Friedman to purchase the Mabry Property for

19  $340,000.  On November 19, 2004, Benjamin executed a power of attorney giving his children,

20  James Friedman and Susan Friedman, power over his real property, including authority to "sign

21  the closing of the escrow on his behalf."  James Friedman wrote a letter to plaintiff indicating his

22  intent to follow through on the Purchase Agreement but "changed his mind and never come

23  down to close escrow."  In response, plaintiff "made [] an effort to cancel or rescind the

24  Mortgage Contract."  She asserts that defendant Stewart Title continues to hold plaintiff's good

25  faith deposit, down payments and closing costs; that defendant Chicago Title Company, "where

26  the first escrow was opened," did not inform plaintiff that it closed the escrow November 30,

1   2004, following the Friedmans' repudiation; that defendant Golden Horizon Mortgage did not

2   inform plaintiff it reopened escrow December 2004 or of the withdrawal of plaintiff's loan

3   agreement; that defendant nBank Mortgage Company, which approved the first and second loans,

4   did not inform plaintiff of the cancellation of the loan originated by Golden Horizon Mortgage;

5   and that defendant Coldwell Banker Elite put a "for sale" sign on the property despite knowing it

6   was in escrow.

7   Benjamin Friedman died May 10, 2006.  Plaintiff is 71 years of age.

8   The complaint rests federal subject matter jurisdiction on the "Truth in Lending

9   Act, 15 U.S.C. § 1635(a-b)," and plaintiff's asserted right thereunder to rescind the mortgage

10   contract, and on "U.S. Code Collection Title 15>Chapter 2B> § 78u-2[]" (the Securities

11   Exchange Act).  The complaint also asserts "pendant jurisdiction" over plaintiff's claims for

12   relief, viz., a declaration that the Purchase Agreement and Mortgage Contract are valid and

13   enforceable; injunctive relief according plaintiff the right to possess and purchase the Mabrey

14   property; and punitive damages for plaintiff's emotional and physical distress.  Plaintiff also

15   asserts, in her oppositions to the pending motions, federal subject matter jurisdiction pursuant to

16   the Fifth and Fourteenth Amendments to the U.S. Constitution (asserting denial of equal

17   protection and due process), the Seventh Amendment (right to jury trial) and the Ninth

18   Amendment (nondisparagement of constitutionally unenumerated rights).

19   The only Answer was filed by Robert Do, sued as "Coldwell Banker Elite" but

20   self-described as "an individual formerly doing business as Coldwell Banker All State Homes

21   Elite."  Golden Horizon Mortgage has not appeared in the action.[2]  All other defendants filed, or

22   joined in, the pending motions to dismiss.

23

24   [2] Plaintiff represents she served the summons and complaint by mail upon Golden Horizon Mortgage on May 18, 2007.  See Return of Service filed May 31, 2007.  However, the

25   address used by plaintiff is different than that provided by the corporation to the California Secretary of State for purposes of service of process, and such mailing does not, in any case,

26   conform to the service requirements of Fed. R. Civ. P. 4.

1    Several state court actions have been filed; some are decided, others are pending.

2    Stewart Title concedes it holds plaintiff's escrow deposit of $45,975.20, and has

3    filed a state action in interpleader.  Sac. Sup Ct. No. 07AS03419, filed July 26, 2007 (naming

4    plaintiff herein, Lita Corbella, and James Friedman (as Trustee of the Friedman Continuation

5    Trust and Executor of the Benjamin Friedman Estate).

6    On January 19, 2005, the Friedmans filed suit to cancel the "Mabrey Purchase

7    Agreement."  Sac. Sup. Ct. No. 05AS00227.  Judgment was rendered May 1, 2007, declaring

8    void all of the following:  an October 2003 "Commission Agreement" and  "Residential Tenancy

9    Agreement Option to Purchase" the Mabrey property; a June 2004 "Assignment of Contract for

10    Option to Purchase" the property; and a November 2004 "Residential Purchase Agreement and

11    Joint Escrow Instructions."  The court found that Ms. Turcynski and Ms. Corbella "have no

12    rights to purchase, sell, lease, transfer, convey, hypothecate, or encumber any right, title, or

13    interest" in the Mabrey property, and awarded costs of the suit to the Friedmans ($57,421 against

14    Ms. Turczynski).  Plaintiff's cross-complaint for return of her escrow deposit is scheduled for

15    trial on December 10, 2007.  Sac. Sup. Ct. No. 05AS00227; see also Sac. Sup. Ct. No.

16    06AS02533 (cancellation of Mabrey Purchase Agreement).

17    On July 23, 2007, the superior court ruled in favor of the Friedmans in their

18    unlawful detainer action against Ms. Turczynski.  The court granted restitution and possession of

19    the Mabrey Property to the Friedmans, and damages at the rate of $1600 per month for an

20    approximate total of $45,000.  Sac. Sup. Ct. No. 07AS02094.  Plaintiff was evicted from the

21    premises August 1, 2007.

22    LEGAL STANDARDS

23    Defendants move to dismiss plaintiff's amended complaint for lack of federal

24    subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A federal court is a court of limited

25    jurisdiction and may adjudicate only those cases authorized by the Constitution and by Congress.

26    See Kokkonen v. Guardian Life Ins. Co, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994);

4

1    Ankenbrandt v. Richards, 504 U.S. 689, 697-99, 112 S. Ct. 2206, 2212 (1992); U.S. Const. Art.

2    III, §§ 1, 2.  Lack of subject matter jurisdiction may be raised at any time by either party or by the

3    court.  See Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir.

4    1996).

5           On a Rule12(b)(1) motion to dismiss, plaintiff bears the burden of proving

6    jurisdiction.  See, e.g., Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th

7    Cir.1995); Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th

8    Cir.1979).  When the motion attacks the complaint on its face, as here, the court considers the

9    complaint's allegations to be true in order to ascertain whether jurisdiction may be premised on

10   diversity of citizenship or a federal question.  For diversity jurisdiction pursuant to 28 U.S.C. §

11   1332, each plaintiff must be diverse from each defendant.[3]  For federal question jurisdiction

12   pursuant to 28 U.S.C. § 1331, the complaint must either (1) arise under a federal law or the

13   United States Constitution, (2) allege a "case or controversy" within the meaning of Article III,

14   section 2, or (3) be authorized by a jurisdiction statute.  Baker v. Carr, 369 U.S. 186, 198, 82 S.

15   Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

16   DISCUSSION

17          No party contends, and the court does not find, diversity jurisdiction over this

18   action.  Such jurisdiction would require that each defendant be a citizen of a state other than

19   California,  plaintiff's state of citizenship.  However, several defendants are citizens of

20   \\\\\

21

22          [3]  A federal court's authority to hear cases in diversity is established by 28 U.S.C. § 1332.
     "The diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a
23   diversity case in federal court against multiple defendants, each plaintiff must be diverse from
     each defendant.  That compliance with the diversity statute, including its complete diversity
24   requirement, is the sine qua non of diversity jurisdiction was made clear in Newman-Green, Inc.
     v. Alfonzo-Larrain, 490 U.S. 826 (1989).  In a case involving claims against multiple defendants,
25   "the plaintiff must meet the requirements of the diversity statute for each defendant.  Id. at 829."
     Lee v. American National Insurance Company, 260 F.3d 997, 1004-1005 (9th Cir. 2001) (fn. and
26   citations omitted).

                                                  5

1    California,[4] thus precluding this court's exercise of diversity jurisdiction.  This court's authority,

2    if any, must rest on federal subject matter jurisdiction.

3         A.   Federal Truth in Lending Act

4         Plaintiff premises federal subject matter jurisdiction on the Truth in Lending Act

5    ("TILA"), specifically, 15 U.S.C. § 1635 (a) (requiring creditor's disclosure of obligor's right to

6    rescind) and (b) (return of money or property upon rescission).  Although the complaint seeks

7    enforcement of the Purchase Agreement and Mortgage Contract, plaintiff premises her

8    jurisdictional argument under TILA on the failure of defendants to return plaintiff's escrow

9    deposit upon plaintiff's "rescission" of the Mortgage Contract after James Friedman declined to

10   close escrow.

11        Section 1635(a) accords borrowers a three-day "cooling off" period during which

12   they may cancel a consumer credit transaction.  The lender is required timely to disclose to the

13   creditor his or her right to rescission and to provide appropriate forms for the exercise of that

14   \\\\\

15   \\\\\

16   \\\\\

17   \\\\\

18   \\\\\

19   \\\\\

20   \\\\\

21   \\\\\

22   \\\\\

23   \\\\\

24   \\\\\

25   _____

26     [4] E.g., Stewart Title Co., Golden Horizon Mortgage, Inc., and Coldwell Banker Elite (now pro se defendant and California citizen Robert Do).

right.[5]  Section 1635(b) provides for the return of money or property upon rescission.[6]  Section 1635(f) accords a three-year period for rescission "after the date of consummation of the transaction or upon the sale of the property" if the obligor has failed timely to make material disclosures.

Defendants respond that plaintiff has failed to state a claim under TILA because the challenged transaction was a "residential mortgage transaction," as defined by § 1602(w), which is expressly exempt from the right to rescission pursuant to § 1635(e)(1).  Defendants are correct.  The transaction for which plaintiff seeks rescission was a "residential mortgage transaction," within the meaning of § 1602(w) (security interest sought against plaintiff's

\\\\\

\\\\\

---

[5]  15 U.S.C. § 1635 (a) ("Disclosure of obligor's right to rescind") provides in pertinent part:

Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

[6]  15 U.S.C. § 1635(b) provides in pertinent part:

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. . . .

1  dwelling for the purpose of acquiring it),[7] and was therefore expressly exempt from TILA's

2  disclosure and rescission rights pursuant to § 1635(e)(1) ("[t]his section does not apply to. . . a

3  residential mortgage transaction as defined in section 1602(w) of this title").  See also, 12 C.F.R.

4  § 226.23 (f) (exempting residential mortgage transactions from rescission rights).[8]

5          Case law supports the express language of sections 1602(w) and 1635(e)(1)

6  exempting residential mortgage transactions, specifically, purchase-money first mortgages (as

7  here), from the right of rescission.  See, e.g., Williams v. Homestake Mortgage Company, 986 F.

8  2d 1137, 1139, n. 5 (11th Cir. 1992) ("Rescission under § 1635(a) applies to those transactions in

9  which the creditor retains a security interest, other than a first mortgage, on the consumer's

10  principal residence"); N.C. Freed Co., Inc. v. Board of Governors of the Federal Reserve System,

11  473 F.2d 1210, 1214-15 (2d Cir. 1973) ("Any credit transaction which involves a security

12  interest in property must be clearly explained to the consumer as involving a mortgage or lien;

13  any such transaction involving the consume's residence – *other than* in a purchase-money first

14  mortgage for the acquisition of the home – carries a 3-day cancellation right"); In re Jones, 298

15  B.R. 451, 457, n. 29 and related text (D. Kan. 2003) (exempt from rescission are purchase-money

16  loans to finance the acquisition or construction of the consumer-borrower's home); Perkins v.

17  Central Mortgage Co., 422 F. Supp. 2d 487 (E.D. Pa. 2006); Briggs v. Provident Bank, 349 F.

18  Supp. 2d 1124 (N.D.Ill. 2004); Scott v. Wells Fargo Home Mortgage Co., 326 F. Supp. 2d 709

19

20          [7]  15 U.S.C. § 1602(w) provides:  "The term 'residential mortgage transaction' means a
21  transaction in which a mortgage, deed of trust, purchase money security interest arising under an
    installment sales contract, or equivalent consensual security interest is created or retained against
    the consumer's dwelling to finance the acquisition or initial construction of such dwelling."
22  Accord, 12 C.F.R. § 226.2(a)(24).

23          [8]  Defendants also assert there is no right of rescission for "unconsummated transactions,"
    as they characterize the parties' disputed agreements.  Plaintiff retorts that the parties' Mortgage
24  Transaction was "consummated" because plaintiff met all conditions precedent and defendants
    continue to retain plaintiff's deposit in a non-interest-bearing account.  The court need not reach
25  this issue.  It is clear the mortgage at issue is a "residential mortgage" within the meaning of
    section 1602(w) and therefore exempt from TILA's disclosure and rescission rights pursuant to
26  section 1635(e)(1).

1  (E.D.Va. 2003); In re Figueroa, __ B.R. __ (S.D. Fla. 2006), 2006 WL 4549615, at *4; Parker v.

2  Long Beach Mortgage Co., __B.R.__ (E.D. Pa. 2006) 2006 WL 2868983, *2; Heuer v. Forest

3  Hill State Bank, 728 F. Supp. 1199, 1200-01 (D.Md. 1989) ("[T]he Congressional purpose in

4  creating the statutory rescission right in the first place [was] to protect home owners from certain

5  sharp practices of home improvement contractors (and those financing such contractors), by

6  creating a rescission right for home improvement loans that were secured by residential

7  mortgages on existing dwellings. . . ."Given this Congressional purpose, it is clear that the

8  Congress did not intend the rescission obligation (or disclosure of it) to extend to a loan whose

9  predominant purpose is to enable the borrower to acquire or erect, on her property, a new

10 residential structure.").

11         Accordingly, the court finds that plaintiff has failed to state a claim under the

12 Truth in Lending Act and cannot rely thereon to establish federal subject matter jurisdiction.

13                  B.  The Securities Exchange Act

14         Plaintiff also asserts, generally, this court has subject matter jurisdiction pursuant

15 to the Securities Exchange Act ("SEC"), 15 U.S.C. § 78a, et seq.  However, the private mortgage

16 transaction at issue here is not a "security" regulated by the SEC.  See, e.g., Home Guaranty

17 Insurance Corp. v. Third Financial Services, Inc., 667 F. Supp. 577 (M.D. Tenn.1987) (mortgage

18 loans are not "securities" under SEC's antifraud provisions, applying Ninth Circuit's "risk

19 capital" analysis set forth in United California Bank v. THC Financial Corp., 557 F.2d 1351 (9th

20 Cir.1977) and Great Western Bank & Trust v. Kotz, 532 F.2d 1252 (9th Cir.1976); see

21 Developers Mortgage Company v. Transohio Savings Bank, 706 F. Supp. 570 (S.D. Ohio 1989)).

22                  C.  Federal Constitutional Claims

23         Plaintiff fails to state a federal constitutional claim.  She does not allege the

24 requisite state action to support her due process or equal protection claims under the Fifth and

25 Fourteenth Amendments.  See, e.g., Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 746

26 -747 (9th Cir. 2003), citing Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n., 531

1   U.S. 288, 295, 121 S. Ct. 924 (2001) ("[t]he United States Constitution protects individual rights

2   only from government action, not from private action").   Nor has plaintiff stated a cause of action

3   under the general provisions of the Ninth Amendment.  See, e.g., Massachusetts v. Upton, 466

4   U.S. 727, 737, 104 S. Ct. 2085, 2090 (1984) (Stevens, J., conc.) ("the Ninth Amendment, it has

5   been said, states but a truism").[9]   Finally, plaintiff does not have the right to a civil jury trial

6   under the Seventh Amendment in the absence of a federal claim.

7              D.  Pendant State Claims

8              In cases conferring federal subject matter jurisdiction, the court may exercise

9   pendant jurisdiction over related state claims.  28 U.S.C. § 1367; United Mine Workers of

10  America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130 (1966).  However, plaintiff's alleged state claims

11  are in reality mischaracterization of her claims for relief (declaratory and injunctive relief and

12  damages), and would not, therefore, require an exercise of pendant jurisdiction had plaintiff pled

13  a federal cause of action.

14  CONCLUSION

15             This court does not have federal subject matter jurisdiction over plaintiff's claims

16  and must, therefore, recommend dismissal of this action.  Plaintiff may appeal the decisions of

17  the state superior court to the state appellate court.  This court notes, nonetheless, that while it

18  does not have jurisdiction to review the "correctness" of the state court proceedings, the

19  imbalance of legal and financial resources between plaintiff and defendants herein is striking.

---

        [9]  The Ninth Amendment protects unarticulated rights.  "The absence of a Bill of Rights
in the Constitution proposed by the Federal Constitutional Convention of 1787 was a major
objection to the Convention's proposal. See, e.g., 12 The Papers of Thomas Jefferson 438 (Boyd
ed. 1955). In defense of the Convention's plan Alexander Hamilton argued that the enumeration
of certain rights was not only unnecessary, given that such rights had not been surrendered by the
people in their grant of limited powers to the Federal Government, but "would even be
dangerous" on the ground that enumerating certain rights could provide a "plausible pretense" for
the Government to claim powers not granted in derogation of the people's rights. The Federalist
No. 84, pp. 573, 574 (Ford ed. 1898) (A. Hamilton). The latter argument troubled the First
Congress during deliberations on the Bill of Rights, and its solution became the Ninth
Amendment. See 1 Annals of Congress 439 (1789) (remarks of Rep. Madison)."  Massachusetts
v. Upton, supra, 466 U.S. at 737.

1    The state court proceedings have resulted in plaintiff's eviction and the imposition of damages

2    that are more than double the amount plaintiff, who proceeds in pro se, can recover from the

3    return of her escrow deposit.  Plaintiff nonetheless pursues her claims and sense of justice

4    sincerely and articulately.  The superior court would do well to bring the various state actions to a

5    consolidated close in as fair and equitable a manner as possible.

6           Accordingly, IT IS HEREBY RECOMMENDED that the following motions to

7    dismiss be granted: (1) filed July 16, 2007, by James and Susan Friedman (2) filed June 14, 2007,

8    by nBank Mortgage, and (3) filed July 26, 2007, by Stewart Title Company.  Plaintiff's Notice of

9    Lis Pendens, filed May 22, 2007 should be discharged, as there is no probable cause to sustain it

10   in this court.

11          These findings and recommendations are submitted to the Honorable Ralph R.

12   Beistline, the United States District Judge assigned to this case, pursuant to the provisions of 28

13   U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations,

14   plaintiff may file written objections with the court.  The document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

16   failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED:  10/23/07

19                                              /s/ Gregory G. Hollows

20                                              _____
                                                GREGORY G. HOLLOWS
                                                U. S. MAGISTRATE JUDGE

21

22   GGH5:turc0890.f&r

23

24

25

26

11